```
———— FILED      ———— ENTERED
———— LODGED    ———— RECEIVED

        MAY 2 6 2005    ES

                AT SEATTLE
        CLERK U.S. DISTRICT COURT
BY  WESTERN DISTRICT OF WASHINGTON
                              DEPUTY
```

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF WASHINGTON

AT SEATTLE

TERENCE FERNANDES, Derivatively On Behalf
of CELL THERAPEUTICS, INC.,

        Plaintiff,

  v.

MAX E. LINK, JAMES A. BIANCO, JOHN M.
FLUKE, JR., VARTAN GREGORIAN, PHILLIP
M. NUDELMAN, MARY O'NEIL MUNDINGER,
ERICH PLATZER, JACK W. SINGER, SILVANO
SPINELLI, and DOES 1-25, inclusive,

        Defendants

  -and-

CELL THERAPEUTICS, INC., a Washington
corporation,

       Nominal Defendant.

# C05-0964 JLR

Case No.

**NOTICE OF REMOVAL**

05-CV-00964-CMP

Pursuant to U.S.C. § 1441(a), defendants Vartan Gregorian and Mary O'Neil
Mundinger hereby remove the above-entitled action to the United States District Court
for the Western District of Washington.  Defendants Gregorian and Mundinger state as

**NOTICE OF REMOVAL**

**ORIGINAL**

Heller Ehrman LLP
701 Fifth Avenue, Suite 6100
Seattle, Washington 98104-7098
Telephone (206) 447-0900

1 follows:

2     1.    The above-entitled case was filed in King County Superior Court, State

3 of Washington, under the caption *Terence Fernandes, Derivatively on Behalf of Cell*

4 *Therapeutics, Inc. v. Max E Link et al.*, Case No. 05-2-15473-0 SEA.

5     2.    This is a civil action filed by Terence Fernandes against defendants Max

6 E. Link, James A. Bianco, John M. Fluke, Jr., Vartan Gregorian, Phillip M. Nudelman,

7 Mary O'Neil Mundinger, Erich Platzer, Jack W. Singer, Silvano Spinelli, and Does 1-

8 25. Cell Therapeutics, Inc. is named as a nominal defendant. The citizenship of each

9 of these defendants is as follows:

10     a) Defendants Gregorian and Mundinger are citizens of the State of New

11 York, and were so at the time this action was initiated.

12     b) Defendants Bianco, Fluke, Nudelman and Singer are citizens of the

13 State of Washington, and were so at the time this action was initiated.

14     c) Defendants Link, Platzer and Spinelli, both now and at the time this

15 action was initiated, are (and were) foreign nationals and not citizens of any State of the

16 United States of America.

17     d) Nominal defendant Cell Therapeutics, Inc., which is aligned as a

18 defendant for purposes of 28 U.S.C. §§ 1332 and 1441, is a Washington corporation

19 with its principal place of business in Washington. This was also the case at the time

20 this action was initiated.

21     e) The citizenship of the alleged "Doe" defendants must by law be

22 disregarded for purposes of removal. 28 U.S.C. § 1441(a).

23     3.    Now and at the time this action was initiated, plaintiff Terence Fernandes

24 is (and was) a citizen of California, Georgia, Pennsylvania, Michigan or Oregon, and is

25 (and was) not a citizen of either Washington or New York. Plaintiff Fernandes did not

26 verify the complaint, as required pursuant to CR 23.1, which would have revealed his

27 location and residence. Plaintiff's verification was executed by Fernandes' attorney

28 rather than by Fernandes himself, and so Fernandes has not pled or disclosed in a

Heller Ehrman LLP
701 Fifth Avenue, Suite 6100
Seattle, Washington 98104-7098
Telephone (206) 447-0900

1 │ verified declaration that he is a citizen of any particular state. RCW 9A.72.085 (where

2 │ a person's verification is required by law, an unsworn declaration may be submitted

3 │ instead only if, among other things, it is signed by the person himself or herself and

4 │ states the date and place of its execution); GR 13 (same).

5 │     4.      Diversity of citizenship exists in each claim between plaintiff and

6 │ defendants. 28 U.S.C. § 1332(a).

7 │     5.      Plaintiff's claims involve an amount in controversy that exceeds the

8 │ statutory minimum of $75,000, exclusive of interest and costs. This is demonstrated

9 │ by, among other things, ¶ 47 of the attached complaint, which alleges insider selling in

10 │ the amount of $833,798.37, and the "Prayer for Relief" in the same complaint, in which

11 │ plaintiff asks the Court to order "disgorgement of all profits, benefits and other

12 │ compensation obtained by the defendants."

13 │     6.      Under 28 U.S.C. § 1332(a), this Court has original jurisdiction over the

14 │ subject matter of the present action because it is an action between citizens of different

15 │ states where the sum or value of the matter in controversy exceeds $75,000, exclusive

16 │ of interest and costs.

17 │     7.      This action is removed to this Court under 28 U.S.C. § 1441 because this

18 │ Court has original jurisdiction over the action. Defendants expressly reserve all

19 │ objections and defenses, including but not limited to lack of service of process and lack

20 │ of personal jurisdiction.

21 │     8.      In accordance with the requirements of 28 U.S.C. § 1446, this Notice of

22 │ Removal was timely filed, plaintiff's complaint having been filed in King County

23 │ Superior Court on May 9, 2005, and no defendant currently having been served with

24 │ the complaint or summons. Attached hereto as EXHIBIT A and incorporated herein by

25 │ this reference is a copy of that complaint.

26 │     9.      Written notification of the filing of this Notice is being provided to

27 │ plaintiff as required by law.

28 │

Heller Ehrman LLP
701 Fifth Avenue, Suite 6100
Seattle, Washington 98104-7098
Telephone (206) 447-0900

1      10.    A true copy of this Notice of Removal is being filed with the Clerk of the

2  King County Superior Court of Washington.

3

4  DATED this 26th day of May, 2005     HELLER EHRMAN LLP

5

6                                By:  _____

7                                    Daniel J. Dunne, WSBA #16999

                                  Norman J. Blears,

8                                        *Pro Hac Vice Application Pending*

                                701 Fifth Avenue, Suite 6100

9                                  Seattle, WA 98104

10                                Tel: (206) 447-0900

                              Fax: (206 447-0849

11                                E-mail: norm.blears@hellerehrman.com

                                      daniel.dunne@hellerehrman.com

12

13                                Attorney for Defendants

                              Vartan Gregorian and Mary O'Neil Mundinger

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Heller Ehrman LLP
701 Fifth Avenue, Suite 6100
Seattle, Washington 98104-7098
Telephone (206) 447-0900

# EXHIBIT A

CHARLES W. MERTEL

FILED

05 MAY -9 AM 9: 17

KING COUNTY
SUPERIOR COURT CLERK
SEATTLE, WA.

SUPERIOR COURT OF THE STATE OF WASHINGTON
KING COUNTY

| | |
|---|---|
| TERENCE FERNANDES, Derivatively On Behalf of CELL THERAPEUTICS, INC., <br><br> Plaintiff, <br><br> vs. <br><br> MAX E. LINK, JAMES A. BIANCO, JOHN M. FLUKE, JR., VARTAN GREGORIAN, PHILLIP M NUDELMAN, MARY O'NEIL MUNDINGER, ERICH PLATZER, JACK W. SINGER, SILVANO SPINELLI, and DOES 1-25, inclusive, <br><br> Defendants <br><br> -and- <br><br> CELL THERAPEUTICS, INC., a Washington corporation, <br><br> Nominal Defendant. | Case 05-2-15473-0 SEA <br><br> **VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT FOR BREACH OF FIDUCIARY DUTY, ABUSE OF CONTROL, GROSS MISMANAGEMENT, WASTE OF CORPORATE ASSETS AND UNJUST ENRICHMENT** <br><br><br><br><br><br><br><br><br><br><br><br><br><br> DEMAND FOR JURY TRIAL |

Plaintiff, by his attorneys, submits this Verified Shareholder Derivative Complaint (the "Complaint") against the defendants named herein.

### NATURE OF THE ACTION

1.      This is a shareholder derivative action brought by a shareholder of Cell Therapeutics, Inc. ("Cell Therapeutics" or the "Company"), on behalf of the Company against certain of its officers and directors seeking to remedy defendants' violations of state law, including breaches of fiduciary

SHAREHOLDER DERIVATIVE COMPLAINT - 1

MULFINGER LAW GROUP PLLC
13555 Bel-Red Road, Suite 111A
Bellevue, WA 98005
Telephone: (425) 284-1812 · Facsimile: (425) 284-1813

1   duties, abuse of control, gross mismanagement, waste of corporate assets and unjust enrichment that

2   occurred between June 7, 2004 and the present (the "Relevant Period") and that have caused

3   substantial losses to Cell Therapeutics and other damages, such as to its reputation and goodwill.

4                                   **JURISDICTION AND VENUE**

5       2.      This Court has jurisdiction over all causes of action asserted herein pursuant to

6   Revised Code of Washington §2.08.010.

7       3.      This Court has jurisdiction over each defendant named herein because each defendant

8   is either a corporation that does sufficient business in Washington, or is an individual who has

9   sufficient minimum contacts with Washington so as to render the exercise of jurisdiction by the

10  Washington courts permissible under traditional notions of fair play and substantial justice.

11      4.      Venue is proper in this Court because one or more of the defendants either resides in

12  or maintains executive offices in this County, a substantial portion of the transactions and wrongs

13  complained of herein, including the defendants' primary participation in the wrongful acts detailed

14  herein and aiding and abetting and conspiracy in violation of fiduciary duties owed to Cell

15  Therapeutics occurred in this County, and defendants have received substantial compensation in this

16  County by doing business here and engaging in numerous activities that had an effect in this County.

17                                  **SUMMARY OF THE ACTION**

18      5.      Cell Therapeutics develops, acquires and commercializes treatments for cancer. The

19  research and in licensing activities are focused on identifying ways to treat cancer. The Company

20  markets TRISENOX (arsenic trioxide) for the treatment of relapsed or refractory acute

21  promyelocytic leukemia (APL) in the United States and in Europe. It is developing XYOTAX

22  (paclitaxel poliglumex) for the potential treatment of non-small cell lung cancer (NSCLC) and

23  ovarian cancer. The Company has completed enrollment of more than 1,700 patients in three pivotal

24  Phase III trials of XYOTAX, known as STELLAR 2, 3 and 4, for the treatment of NSCLC. It also

25  develops pixantrone, a compound in the class of drugs known as anthracyclines, for the potential

26  treatment of non-Hodgkin's lymphoma (NHL) and has several clinical trials ongoing, including a

27  pivotal Phase III trial for the potential treatment of relapsed aggressive NHL.

28  SHAREHOLDER DERIVATIVE COMPLAINT - 2

MULFINGER LAW GROUP PLLC
13555 Bel-Red Road, Suite 111A
Bellevue, WA 98005
Telephone: (425) 284-1812 · Facsimile: (425) 284-1813

6.    Despite defendants' public representations to the contrary:

    (a)    the observations associated with XYOTAX evidenced that the primary endpoint for the XYOTAX study would not be met, as claimed;

    (b)    the claims associated with the Company's ability to commence pre-launch activities or otherwise even begin to submit a New Drug Application ("NDA") for XYOTAX were grossly overstated: in fact, the Company's ability to ever reach these points is highly questionable; and

    (c)    the survival rate for individuals with NSCLC using XYOTAX was not superior to the prevailing treatment.

7.    As a result of the defendants' false statements, Cell Therapeutics' stock traded at inflated levels during the Relevant Period, increasing to as high as $10.49 on March 2, 2005. Taking advantage of the inflation, the defendants caused the Company to sell more than $18.4 million worth of the Company's shares via a private placement. Also during the Relevant Period, the defendants caused the Company to sell an additional $49.16 million via a secondary offering. Thus, defendants, devoid of a profitable quarter and causing false claims to inflate the Company's shares, caused Cell Therapeutics to sell $18.4 million worth of its securities in a private placement just months before the Company imploded. In turn, defendants utilized these proceeds to pay themselves exorbitant salaries while at the same time exposing the Company to liability. Further, defendants capitalized on Cell Therapeutics' inflated stock by selling $833,798.37 worth of their personally held shares.

## THE PARTIES

8.    Plaintiff Terence Fernandes is, and was at times relevant hereto, an owner and holder of Cell Therapeutics common stock.

9.    Nominal defendant Cell Therapeutics is a corporation organized and existing under the laws of the state of Washington with its headquarters located at 501 Elliott Avenue West, Suite 400, Seattle, Washington. Cell Therapeutics develops, acquires and commercializes treatments for cancer.

SHAREHOLDER DERIVATIVE COMPLAINT - 3

MULPINGER LAW GROUP PLLC
13555 Bel-Red Road, Suite 111A
Bellevue, WA 98005
Telephone: (425) 284-1812 • Facsimile: (425) 284-1813

10.     Defendant James A. Bianco ("Bianco") is, and at all times relevant hereto was principal founder, President, Chief Executive Officer ("CEO") and a director of Cell Therapeutics. Because of Bianco's positions, he knew the adverse non public information about the business of Cell Therapeutics, specifically, that XYOTAX was not superior to the prevailing treatment, as well as its finances, markets and present and future business prospects, via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and Board of Directors (the "Board") meetings and committees thereof and via reports and other information provided to him in connection therewith.  During the Relevant Period, Bianco participated in the issuance of false and/or misleading statements, including the preparation of the false and/or misleading press releases and Securities and Exchange Commission ("SEC") filings.  For FY:03, Cell Therapeutics paid defendant Bianco $3,053,665, in salary, bonus, restricted stock awards and other compensation, and granted him 125,000 options to purchase Cell Therapeutics stock.  During the Relevant Period, Bianco sold 60,000 shares of Cell Therapeutics stock for proceeds of $334,273.00.

11.     Defendant Jack W. Singer ("Singer") is, and at all times relevant hereto was, founder, Executive Vice President, and Chief Medical Officer and a director of Cell Therapeutics.  Because of Singer's position, he knew the adverse non public information about the business of Cell Therapeutics, specifically, that XYOTAX was not superior to the prevailing treatment, as well as its finances, markets and present and future business prospects, via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and Board meetings and committees thereof and via reports and other information provided to him in connection therewith.  During the Relevant Period, Singer participated in the issuance of false and/or misleading statements, including the preparation of the false and/or misleading press releases and SEC filings.  For FY:03, Cell Therapeutics paid defendant Singer $1,223,596 in salary, bonus, restricted stock awards and other compensation, and granted him 75,000 options to purchase Cell Therapeutics stock.  During the Relevant Period, Singer sold 19,800 shares of Cell Therapeutics stock for proceeds of $187,584.65.

SHAREHOLDER DERIVATIVE COMPLAINT - 4

MULLINGER LAW GROUP PLLC
13555 Bel-Red Road, Suite 111A
Bellevue, WA  98005
Telephone: (425) 284-1812 • Facsimile: (425) 284-1813

12.     Defendant Silvano Spinelli ("Spinelli") is, and at all times relevant hereto was, Executive Vice President of Development, Managing Director European Operations, and a director of Cell Therapeutics. Because of Spinelli's position, he knew the adverse non public information about the business of Cell Therapeutics, specifically, that XYOTAX was not superior to the prevailing treatment, as well as its finances, markets and present and future business prospects, via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and Board meetings and committees thereof and via reports and other information provided to him in connection therewith. During the Relevant Period, Spinelli participated in the issuance of false and/or misleading statements, including the preparation of the false and/or misleading press releases and SEC filings. During the Relevant Period, Spinelli sold 40,000 shares of Cell Therapeutics stock for proceeds of $311,940.37.

13.     Defendant Max E. Link ("Link") is, and at all times relevant hereto was, Chairman and a director of Cell Therapeutics. Because of Link's position, he knew the adverse non public information about the business of Cell Therapeutics, specifically, that XYOTAX was not superior to the prevailing treatment, as well as its finances, markets and present and future business prospects, via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at Board meetings and committees thereof and via reports and other information provided to him in connection therewith. During the Relevant Period, Link participated in the issuance of false and/or misleading statements, including the preparation of the false and/or misleading press releases and SEC filings.

14.     Defendant John M. Fluke ("Fluke") is, and at all times relevant hereto was, a director of Cell Therapeutics. Because of Fluke's position, he knew the adverse non public information about the business of Cell Therapeutics, specifically, that XYOTAX was not superior to the prevailing treatment, as well as its finances, markets and present and future business prospects, via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at Board meetings and committees thereof and via reports and other information provided to him in connection therewith. During the Relevant Period, Fluke participated

SHAREHOLDER DERIVATIVE COMPLAINT - 5

1  in the issuance of false and/or misleading statements, including the preparation of the false and/or

2  misleading press releases and SEC filings.

3      15.    Defendant Vartan Gregorian ("Gregorian") is, and at all times relevant hereto was, a

4  director of Cell Therapeutics.  Because of Gregorian's position, he knew the adverse non public

5  information about the business of Cell Therapeutics, specifically, that XYOTAX was not superior to

6  the prevailing treatment, as well as its finances, markets and present and future business prospects,

7  via access to internal corporate documents, conversations and connections with other corporate

8  officers and employees, attendance at Board meetings and committees thereof and via reports and

9  other information provided to him in connection therewith.  During the Relevant Period, Gregorian

10  participated in the issuance of false and/or misleading statements, including the preparation of the

11  false and/or misleading press releases and SEC filings.

12      16.    Defendant Phillip M. Nudelman ("Nudelman") is, and at all times relevant hereto

13  was, a director of Cell Therapeutics.  Because of Nudelman's position, he knew the adverse non

14  public information about the business of Cell Therapeutics, specifically, that XYOTAX was not

15  superior to the prevailing treatment, as well as its finances, markets and present and future business

16  prospects, via access to internal corporate documents, conversations and connections with other

17  corporate officers and employees, attendance at Board meetings and committees thereof and via

18  reports and other information provided to him in connection therewith.  During the Relevant Period,

19  Nudelman participated in the issuance of false and/or misleading statements, including the

20  preparation of the false and/or misleading press releases and SEC filings.

21      17.    Defendant Mary O'Neil Mundinger ("Mundinger") is, and at all times relevant hereto

22  was, a director of Cell Therapeutics.  Because of Mundinger's position, she knew the adverse non

23  public information about the business of Cell Therapeutics, specifically, that XYOTAX was not

24  superior to the prevailing treatment, as well as its finances, markets and present and future business

25  prospects, via access to internal corporate documents, conversations and connections with other

26  corporate officers and employees, attendance at Board meetings and committees thereof and via

27  reports and other information provided to her in connection therewith. During the Relevant Period,

28  SHAREHOLDER DERIVATIVE COMPLAINT - 6

1  Mundinger participated in the issuance of false and/or misleading statements, including the
2  preparation of the false and/or misleading press releases and SEC filings.

3       18.    Defendant Erich Platzer ("Platzer") is, and at all times relevant hereto was, a director
4  of Cell Therapeutics. Because of Platzer's position, he knew the adverse non public information
5  about the business of Cell Therapeutics, specifically, that XYOTAX was not superior to the
6  prevailing treatment, as well as its finances, markets and present and future business prospects, via
7  access to internal corporate documents, conversations and connections with other corporate officers
8  and employees, attendance at Board meetings and committees thereof and via reports and other
9  information provided to him in connection therewith. During the Relevant Period, Platzer
10 participated in the issuance of false and/or misleading statements, including the preparation of the
11 false and/or misleading press releases and SEC filings.

12      19.    The defendants identified in ¶¶10-18 are referred to herein as the "Director
13 Defendants." The defendants identified in ¶¶10-12 are referred to herein as the "Officer
14 Defendants." The defendants identified in ¶¶10-12 are referred to herein as the "Insider Selling
15 Defendants." Collectively, the Director Defendants, the Officer Defendants and the Insider Selling
16 Defendants are referred to herein as the "Individual Defendants."

17                    **DUTIES OF THE INDIVIDUAL DEFENDANTS**

18      20.    By reason of their positions as officers, directors and/or fiduciaries of Cell
19 Therapeutics and because of their ability to control the business and corporate affairs of Cell
20 Therapeutics, the Individual Defendants owed Cell Therapeutics and its shareholders fiduciary
21 obligations of trust, loyalty, good faith and due care, and were and are required to use their utmost
22 ability to control and manage Cell Therapeutics in a fair, just, honest and equitable manner. The
23 Individual Defendants were and are required to act in furtherance of the best interests of Cell
24 Therapeutics and its shareholders so as to benefit all shareholders equally and not in furtherance of
25 their personal interest or benefit.

26      21.    Each director and officer of the Company owes to Cell Therapeutics and its
27 shareholders the fiduciary duty to exercise good faith and diligence in the administration of the

28 SHAREHOLDER DERIVATIVE COMPLAINT - 7

MULFINGER LAW GROUP PLLC
13555 Bel-Red Road, Suite 111A
Bellevue, WA 98005
Telephone: (425) 284-1812 • Facsimile: (425) 284-1813

1    affairs of the Company and in the use and preservation of its property and assets, and the highest

2    obligations of fair dealing. In addition, as officers and/or directors of a publicly held company, the

3    Individual Defendants had a duty to promptly disseminate accurate and truthful information with

4    regard to the Company's flagship drug XYOTAX, as well as the Company's forecasts so that the

5    market price of the Company's stock would be based on truthful and accurate information.

6         22.    The Individual Defendants, because of their positions of control and authority as

7    directors and/or officers of Cell Therapeutics, were able to and did, directly and/or indirectly,

8    exercise control over the wrongful acts complained of herein, as well as the contents of the various

9    public statements issued by the Company. Because of their advisory, executive, managerial and

10   directorial positions with Cell Therapeutics, each of the Individual Defendants had access to adverse

11   non public information about the true risks of clinical study failure and prospects for failure to gain

12   marketing approval for XYOTAX due to the corneal clearing primary endpoint required by the FDA,

13   as well as the Company's financial prospects.

14        23.    At all times relevant hereto, each of the Individual Defendants was the agent of each

15   of the other Individual Defendants and of Cell Therapeutics, and was at all times acting within the

16   course and scope of such agency.

17        24.    To discharge their duties, the officers and directors of Cell Therapeutics were

18   required to exercise reasonable and prudent supervision over the management, policies, practices and

19   controls of the financial affairs of the Company. By virtue of such duties, the officers and directors

20   of Cell Therapeutics were required to, among other things:

21              (a)    refrain from acting upon material inside corporate information to benefit

22   themselves;

23              (b)    ensure that the Company complied with its legal obligations and requirements,

24   including acting only within the scope of its legal authority and disseminating truthful and accurate

25   statements to the FDA, SEC and the investing public;

26

27

28   SHAREHOLDER DERIVATIVE COMPLAINT - 8

MULFINGER LAW GROUP PLLC
13555 Bel-Red Road, Suite 111A
Bellevue, WA 98005
Telephone: (425) 284-1812 • Facsimile: (425) 284-1813

1    (c)  conduct the affairs of the Company in an efficient, business like manner so as

2 to make it possible to provide the highest quality performance of its business, to avoid wasting the

3 Company's assets, and to maximize the value of the Company's stock;

4    (d)  properly and accurately guide investors and analysts as to the true financial

5 condition of the Company at any given time, including making accurate statements about the

6 Company's product and financial prospects, and ensuring that the Company maintained an adequate

7 system of financial controls such that the Company's public statements would be true and accurate at

8 all times;

9    (e)  remain informed as to how Cell Therapeutics conducted its operations, and,

10 upon receipt of notice or information of imprudent or unsound conditions or practices, to make

11 reasonable inquiry in connection therewith, and to take steps to correct such conditions or practices

12 and make such disclosures as necessary to comply with federal and state securities laws; and

13    (f)  ensure that the Company was operated in a diligent, honest and prudent

14 manner in compliance with all applicable federal, state and local laws, rules and regulations.

15   25.  Each Individual Defendant, by virtue of his or her position as a director and/or

16 officer, owed to the Company and to its shareholders the fiduciary duties of loyalty, good faith and

17 the exercise of due care and diligence in the management and administration of the affairs of the

18 Company, as well as in the use and preservation of its property and assets.  The conduct of the

19 Individual Defendants complained of herein involves a knowing and culpable violation of their

20 obligations as directors and officers of Cell Therapeutics, the absence of good faith on their part, and

21 a reckless disregard for their duties to the Company and its shareholders that the Individual

22 Defendants were aware or should have been aware posed a risk of serious injury to the Company.

23 The conduct of the Individual Defendants who were also officers and/or directors of the Company

24 during the Relevant Period has been ratified by the remaining Individual Defendants who

25 collectively comprised all of Cell Therapeutics' Board during the Relevant Period.

26   26.  The Individual Defendants breached their duties of loyalty and good faith by allowing

27 defendants to cause or by themselves causing the Company to fail to disclose the true risks of

SHAREHOLDER DERIVATIVE COMPLAINT - 9

28

MULFINGER LAW GROUP PLLC
13555 Bel-Red Road, Suite 111A
Bellevue, WA 98005
Telephone: (425) 284-1812 • Facsimile: (425) 284-1813

1   clinical study failure and prospects for failure to gain marketing approval for XYOTAX due to the

2   corneal clearing primary endpoint required by the FDA and to misrepresent its financial prospects, as

3   detailed herein *infra*, and by failing to prevent the Individual Defendants from taking such illegal

4   actions.  In addition, as a result of defendants' illegal actions and course of conduct during the

5   Relevant Period, the Company is now the subject of several class action lawsuits that allege

6   violations of federal securities laws.  As a result, Cell Therapeutics has expended and will continue

7   to expend significant sums of money.  Such expenditures include, but are not limited to:

8           (a)     costs incurred to carry out internal investigations, including legal fees paid to

9   outside counsel; and

10          (b)     costs incurred in investigating and defending Cell Therapeutics and certain

11  officers in the class actions, plus potentially millions of dollars in settlements or to satisfy an adverse

12  judgment.

13          27.     Moreover, these actions have irreparably damaged Cell Therapeutics' corporate image

14  and goodwill.  For at least the foreseeable future, Cell Therapeutics will suffer from what is known

15  as the "liar's discount," a term applied to the stocks of companies who have been implicated in illegal

16  behavior and have misled the investing public, such that Cell Therapeutics' ability to raise equity

17  capital or debt on favorable terms in the future is now impaired.

18          **CONSPIRACY, AIDING AND ABETTING, AND CONCERTED ACTION**

19          28.     In committing the wrongful acts alleged herein, the Individual Defendants have

20  pursued, or joined in the pursuit of, a common course of conduct, and have acted in concert with and

21  conspired with one another in furtherance of their common plan or design.  In addition to the

22  wrongful conduct herein alleged as giving rise to primary liability, the Individual Defendants further

23  aided and abetted and/or assisted each other in breach of their respective duties.

24          29.     During all times relevant hereto, the Individual Defendants collectively and

25  individually initiated a course of conduct that was designed to and did: (i) conceal the fact that the

26  Company was issuing false and misleading statement about the true risks of clinical study failure and

27  prospects for failure to gain marketing approval for XYOTAX; (ii) maintain the Individual

28  SHAREHOLDER DERIVATIVE COMPLAINT - 10

1  Defendants' executive and directorial positions at Cell Therapeutics and the profits, power and

2  prestige that the Individual Defendants enjoyed as a result of these positions; and (iii) deceive the

3  investing public, including shareholders of Cell Therapeutics, regarding the Individual Defendants'

4  management of Cell Therapeutics' operations and the Company's future business prospects.  In

5  furtherance of this plan, conspiracy and course of conduct, the Individual Defendants collectively

6  and individually took the actions set forth herein.

7         30.    The Individual Defendants engaged in a conspiracy, common enterprise and/or

8  common course of conduct commencing by at least June 2004 and continuing thereafter.  During this

9  time the Individual Defendants caused the Company to conceal the true fact that XYOTAX was not

10  superior to the prevailing treatment.  In addition, defendants also made other specific, false

11  statements about Cell Therapeutics' future business prospects, as alleged herein.

12         31.    The purpose and effect of the Individual Defendants' conspiracy, common enterprise,

13  and/or common course of conduct was, among other things, to disguise the Individual Defendants'

14  violations of law, breaches of fiduciary duty, abuse of control, gross mismanagement, waste of

15  corporate assets and unjust enrichment; to conceal adverse information concerning the Company's

16  future business prospects; and to artificially inflate the price of Cell Therapeutics common stock so

17  they could: (i) dispose of $833,798.37 of their personally held stock; (ii) protect and enhance their

18  executive and directorial positions and the substantial compensation and prestige they obtained as a

19  result thereof; (iii) sell more than $18.4 million worth of the Company's shares via a private

20  placement; and (iv) complete a secondary offering of 10,350,00 shares of common stock for over

21  $49.16 million in proceeds.

22         32.    The Individual Defendants accomplished their conspiracy, common enterprise and/or

23  common course of conduct by causing the Company to purposefully, recklessly or negligently issue

24  false and misleading press releases about the prolonged survival and relative low adverse event rates

25  being observed in XYOTAX pivotal trial in non-small cell lung cancer, as well as its financial

26  prospects.  Because the actions described herein occurred under the authority of the Board, each of

27

28  SHAREHOLDER DERIVATIVE COMPLAINT - 11

MULFINGER LAW GROUP PLLC
13555 Bel-Red Road, Suite 111A
Bellevue, WA  98005
Telephone: (425) 284-1812 • Facsimile: (425) 284-1813

1 the Individual Defendants was a direct, necessary and substantial participant in the conspiracy,

2 common enterprise and/or common course of conduct complained of herein.

3      33.    Each of the Individual Defendants aided and abetted and rendered substantial

4 assistance in the wrongs complained of herein. In taking such actions to substantially assist the

5 commission of the wrongdoing complained of herein, each Individual Defendant acted with

6 knowledge of the primary wrongdoing, substantially assisted the accomplishment of that

7 wrongdoing, and was aware of his or her overall contribution to and furtherance of the wrongdoing.

8                             **BACKGROUND**

9      34.    On May 6, 2004, the Company issued a press release entitled "Cell Therapeutics, Inc.

10 Announces First Quarter 2004 Financial Results." The press release stated in part:

11     Cell Therapeutics, Inc. (CTI) reported financial results for the quarter ended March
   31, 2004. Total revenues for the quarter were $4.5 million compared to $4.9 million
12     in the first quarter of 2003. Net product sales for TRISENOX (arsenic trioxide)
   injection were $3.9 million for the quarter ended March 31, 2004 compared to $4.3
13     million in the same period in 2003. CTI had previously stated that it expected
   TRISENOX net sales to be at or below the first quarter revenues in 2003 primarily as
14     a result of an error in the reimbursement rate published by the Center for Medicare
   Services (CMS), which incorrectly listed the reimbursement rate for TRISENOX as
15     $2.81 per milligram instead of the correct rate of $32.94 per milligram. CMS
   corrected the error in early February 2004.
16

17     CTI reported a net loss for the quarter of $136.4 million ($2.75 per share)
   compared to a net loss of $30.5 million ($0.92 per share) for the same period in 2003.
18     The loss for the quarter included a one time charge of $88.5 million ($1.79 per share)
   related to the write-off of in-process research and development acquired in the
19     merger with Novuspharma S.p.A, which closed on January 1, 2004.

20

21     "We believe we can achieve our annual sales guidance previously provided
   despite the CMS error. With plans to initiate clinical trials supporting the future
22     expansion of the TRISENOX label for the front-line treatment of APL and relapsed
   multiple myeloma, we anticipate this could provide significant upside to our peak
23     revenue forecasts and have a positive impact on our P&L," stated James A. Bianco,
   M.D., President and CEO of CTI. "We incurred a number of non-recurring expenses
24     in the first quarter as a result of the rapid enrollment in our XYOTAX pivotal studies,
   the execution of the GOG clinical trials agreement and the significant investments in
25     our commercial efforts in the United States and Europe. These investments for
   TRISENOX, XYOTAX and pixantrone place us in the unique position of having the
26     potential to submit two NDAs and four supplemental NDAs over the next 24
27     months."

28 SHAREHOLDER DERIVATIVE COMPLAINT - 12

# IMPROPER STATEMENTS

35.     On June 7, 2004, the Individual Defendants caused Cell Therapeutics to issue a press release entitled "Prolonged Median and One-Year Survival Rate Estimate in XYOTAX(TM) Pivotal Lung Cancer Study Extends Data Release to Early 2005." The press release stated in part:

> At a conference sponsored by Cell Therapeutics, Inc. (CTI) during the 40th Annual Meeting of the American Society of Clinical Oncology, five cancer experts provided a clinical perspective on the continuing investigation of XYOTAX, pixantrone and TRISENOX (arsenic trioxide). In an update on the status of the phase III trials in non-small cell lung cancer, Philip Bonomi, M.D. of Rush-Presbyterian-St. Luke's Medical Center presented encouraging developments in the STELLAR 3 pivotal trial. As a result of higher than historically predicted survival rates the projected number of events required to perform the primary efficacy analysis and data release of the STELLAR 3 trial will not occur until early 2005.

> "The STELLAR 3 and 4 studies are the largest studies ever conducted in poor performance status (PS2) patients. I am impressed with the median number of cycles of doublet therapy administered in STELLAR 3, particularly in light of recently published results from studies of the standard paclitaxel and carboplatin combination therapy. The number of cycles of therapy is unusual for a PS2 patient population and may reflect improved tolerability of XYOTAX," commented Bonomi. "The median survival estimate is longer than data from other trials presented at this year's ASCO conference for PS2 patients."

> Director of Oncology at University of Mississippi and the chair of the GOG ovarian committee, Tate Thigpen, M.D. provided an overview of the GOG phase I/II experience with XYOTAX in more than 200 patients, along with an update on the phase III pivotal trial in the maintenance treatment of ovarian cancer, noting the GOG expects to file its Special Protocol Assessment (SPA) with the FDA shortly. This is the first time the GOG will have filed an SPA with the FDA for the maintenance treatment of patients in remission with ovarian cancer.

> "Based on our phase I/II experience with XYOTAX and the data suggesting that maintenance taxane therapy improves overall survival, we believe we have designed a trial that has every chance of success. This will be the largest trial ever conducted in the maintenance treatment of ovarian cancer. The trial is designed to ensure that we can show a clinically meaningful difference in survival," noted Thigpen. "As an organization, the GOG has been at the forefront of ovarian cancer treatment and research and we are looking forward to initiating this trial with the hope of offering ovarian cancer patients a new, less toxic, more effective treatment."

36.     On July 27, 2004, the Individual Defendants caused Cell Therapeutics to issue a press release entitled "Cell Therapeutics, Inc. Posts Highest TRISENOX(R) Sales Revenues Since Product

SHAREHOLDER DERIVATIVE COMPLAINT - 13

1  Launch; Second Quarter Sales Rise More Than 100% Over First Quarter Sales and 50% Over Same

2  Period in 2003." The press release stated in part:

3      Cell Therapeutics, Inc. (CTI) reported financial results for the second quarter ended
       June 30, 2004. Total revenues for the quarter were $8.3 million compared to $6.1
4      million in the second quarter of 2003. Net product sales for TRISENOX(R) (arsenic
       trioxide) were $7.9 million compared to $5.3 million for the same period in 2003.
5

6          CTI reported a net loss for the quarter of $37.5 million ($0.75 per share)
       compared to a net loss of $30.8 million ($0.93 per share) for the same period in 2003.
7      The Company ended the quarter with approximately $90 million in cash, cash
       equivalents, securities available-for-sale, and interest receivable.
8

9          "We're encouraged by the rebound in TRISENOX(R) sales, making this the
       best quarter since launch," stated James A. Bianco, M.D., President and CEO of CTI.
10     "We are also very excited about the completion of enrollment in our XYOTAX(TM)
       STELLAR lung cancer trials. Our STELLAR 3 data release has been pushed out to
11     early 2005 due to longer patient survival estimates. As such our efforts are now
       focused on pre-launch activities and being in position to submit a new drug
12     application as soon as possible following positive trial results."

13     37.    On July 28, 2004, the Individual Defendants caused Cell Therapeutics to issue a press

14  release entitled "Cell Therapeutics, Inc. Announces Pricing of Upsized Public Offering of 9,000,000

15  Shares of Common Stock." The press release stated in part:

16     Cell Therapeutics, Inc. (CTI) today announced the pricing of the underwritten public
17     offering of 9,000,000 shares of its common stock at a public offering price of $4.75
       per share.
18
           These shares were sold under an existing shelf registration statement. The
19     offering was increased by 1,000,000 shares over the proposed offering announced on
       July 14, 2004. In connection with this offering, CTI has granted the underwriters an
20     option to purchase up to 1,350,000 additional shares to cover over-allotments. All
21     shares are being sold by CTI.

22     38.    On August 31, 2004, the Individual Defendants caused Cell Therapeutics to announce

23  that the underwriters of its recent 9,000,000 share common stock public offering had exercised their

24  over-allotment option and "purchased 1,350,000 additional shares of common stock from CTI at a

25  price of $4.75 per share minus the underwriting discounts. CTI sold a total of 10,350,000 shares of

26  common stock in the offering, including the shares covered by the exercised over-allotment option,

27  for aggregate gross proceeds of approximately $49.16 million."

28  SHAREHOLDER DERIVATIVE COMPLAINT - 14

MULFINGER LAW GROUP PLLC
13555 Bel-Red Road, Suite 111A
Bellevue, WA 98005
Telephone: (425) 284-1812 · Facsimile: (425) 284-1813

39.     On November 9, 2004, the Individual Defendants caused Cell Therapeutics to issue a press release entitled "Trisenox(R) Sales Increase 42 Percent Over Same Period in 2003; Pivotal Trial Data for XYOTAX(TM) on Schedule for Release in Early 2005." The press release stated in part:

> Cell Therapeutics, Inc. (CTI) reported financial results for the third quarter ended September 30, 2004. Total revenues for the quarter were $8.7 million compared to $6.5 million in the third quarter of 2003. Net product sales for TRISENOX(R) (arsenic trioxide) rose to $8.4 million compared to $5.9 million for the same period in 2003.

> CTI reported a net loss for the quarter of $34.9 million ($0.62 per share) compared to a net loss of $32.1 million ($0.96 per share) for the same period in 2003. The Company ended the quarter with approximately $103 million in cash, cash equivalents, securities available-for-sale, and interest receivable.

> "We continue to be encouraged and enthusiastic about the prolonged survival and relatively low adverse event rates being observed in our XYOTAX pivotal trials in non-small cell lung cancer (NSCLC) and look forward to reporting the preliminary results early next year," stated James A. Bianco, M.D., President and CEO of CTI. "In addition, the Gynecologic Oncology Group (GOG) had a very successful meeting with the FDA and is now in the process of readying clinical sites to initiate a XYOTAX phase III clinical trial in ovarian cancer. This milestone, coupled with the completion of the three STELLAR pivotal trials and our progress in opening clinical sites for our phase III trial of pixantrone in aggressive relapsed non-Hodgkin's lymphoma (NHL) has positioned the Company for a very exciting 2005."

40.     On December 20, 2004, the Individual Defendants caused Cell Therapeutics to issue a press release entitled "Cell Therapeutics, Inc. Announces $18.4 Million Direct Equity Placement." The press release stated in part:

> Cell Therapeutics, Inc. (CTI) announced today that it has agreed to sell approximately 2,586,000 shares of its common stock to several institutional investors in a registered direct offering at a negotiated price per share of $7.10.

> The shares of common stock in this offering are being issued under an existing shelf registration statement on Form S-3, which was declared effective by the Securities and Exchange Commission on March 22, 2004.

SHAREHOLDER DERIVATIVE COMPLAINT - 15

1     41.     On January 27, 2005, the Individual Defendants caused Cell Therapeutics to issue a

2 press release entitled "XYOTAX(TM) Pivotal Trial in Non-Small Cell Lung Cancer, STELLAR 3,

3 Reaches Required Number of Events." The press release stated in part:

4        At the Piper Jaffray Healthcare Conference, Cell Therapeutics, Inc. (CTI) announced
that it is on track to report results in late March or early April from the
5        XYOTAX(TM) pivotal trial in non-small cell lung cancer (NSCLC), known as
STELLAR 3, now that the required number of events (deaths) for data analysis has
6        been reached. Due to prolonged survival rates in this blinded trial, CTI had to delay
7        the data analysis from the date anticipated when the trial was initiated in November
2002. The company also updated its progress on the two other ongoing pivotal trials
8        in NSCLC, STELLAR 4 and STELLAR 2. In STELLAR 4, approximately 250 of
the 313 required events have been reached and in STELLAR 2, 578 out of the 635
9        required events have been reached. CTI expects results from STELLAR 4 in the
10      second quarter of this year and results from STELLAR 2 in the third quarter.

11    42.     On February 28, 2005, the Individual Defendants caused Cell Therapeutics to issue a

12 press release entitled "CTI Reports 2004 Quarterly and Year End Results; XYOTAX(TM)

13 STELLAR 3 Pivotal Trial Results Expected for the First Half of March Provide Potential for 2005 to

14 Be Transforming Year for CTI." The press release stated in part:

15        Cell Therapeutics, Inc. (CTI) reported financial results for the quarter and year ended
December 31, 2004. Total revenues for the quarter were $8.1 million compared to
16      $7.2 million in the fourth quarter of 2003. CTI reported a net loss for the quarter of
$43.5 million ($0.72 per share) compared to net loss of $36.7 million ($1.09 per
17      share) for the same period in 2003.

18
        Total revenues for the year ended December 31, 2004, rose to $29.6 million
19      compared to $24.8 million in 2003. For the year, CTI posted a net loss of $252.3
million, including $87.4 million related to an in-process research and development
20      charge as a result of the acquisition of Novuspharma S.p.A., compared to a net loss
of $130.0 million in 2003. The Company ended the year with cash, cash equivalents,
21      securities available-for-sale and interest receivable of approximately $116.0 million.
22      Sales of TRISENOX(R) for the quarter were $6.4 million compared to $6.6 million
in the same period in 2003. The Company had previously guided for lower sales as a
23      result of the launch of a competing product and foresees 2005 net sales of
TRISENOX of approximately $29 million as the commercial team prepares for the
24      potential launch of XYOTAX.

25        *"We made significant progress in 2004 across all aspects of our business*
26      *and are now hoping to harvest the rewards of those efforts as we prepare to*
*analyze the results of three phase III trials for XYOTAX in lung cancer for the*
27      *potential submission of a new drug application (NDA) later this year," noted*

28

MULFINGER LAW GROUP PLLC
13555 Bel-Red Road, Suite 111A
Bellevue, WA 98005
Telephone: (425) 284-1812 • Facsimile: (425) 284-1813

*James A Bianco, M.D., President and CEO of CTI. "With everyone focused on XYOTAX, it is easy to forget that we also have the potential for an interim analysis for our pivotal trial of pixantrone in aggressive lymphoma at the end of this year, which could lead to an NDA submission in 2006. With a robust pipeline of novel oncology products and upcoming pivotal milestones, we believe this may be a transforming year for CTI."*

## THE TRUTH IS DISCLOSED

43. On March 7, 2005, the Individual Defendants caused Cell Therapeutics to issue a press release entitled "STELLER 3 Pivotal Trial Shows XYOTAX (TM) Reduces Side Effects of Paclitaxel With Equivalent Efficacy in the Treatment of Non-Small Cell Lung Cancer (NSCLC) Patients; Study Misses Primary Endpoint, Meets Standard Statistical Test for Non-Inferiority; STELLAR 3 Trial Demonstrates Longest Median Survival Reported in PS2 NSCLC Patients; Tolerability and Convenience Favor XYOTAX." The press release stated in part:

> "We are disappointed that XYOTAX in combination with carboplatin showed equal efficacy after the unprecedented blended median and 1-year survival we saw on the trial. We are encouraged by the preliminary analysis, which demonstrates a significant XYOTAX treatment effect, reduction in toxicities, and increased patient convenience," stated James A. Bianco, M.D., President and CEO of CTI. "We look forward to our upcoming discussion with FDA regarding our STELLAR 2 amendment and the preliminary results of STELLAR 3, as well as having results from STELLAR 2 in April, with STELLAR 4 results coming in shortly thereafter."

44. On this disastrous news, the Company's shares plummeted 50% in a single day on volume of more than 33 million shares.

## REASONS THE STATEMENTS WERE IMPROPER

45. The statements contained herein were materially false and misleading when made because the Individual Defendants caused the Company to fail to disclose or indicate the following::

(a) that the observations associated with XYOTAX evidenced that the primary endpoint for the XYOTAX study would not be met, as claimed;

(b) that claims associated with the Company's ability to commence pre-launch activities or otherwise even begin to submit an NDA for XYOTAX were grossly overstated; in fact, the Company's ability to ever reach these points is highly questionable; and

SHAREHOLDER DERIVATIVE COMPLAINT - 17

1    (c)    that the survival rate for individuals with NSCLC using XYOTAX were not

2  superior to the prevailing treatment.

3    46.    As a result of the Individual Defendants' actions, Cell Therapeutics' market

4  capitalization has been damaged by over $428 million.  At the same time that the defendants were

5  causing Cell Therapeutics to suffer such devastation of its market capitalization, the Insider Selling

6  Defendants fared much better by selling $833,798.37 of their personally held stock.

7                          **ILLEGAL INSIDER SELLING**

8    47.    While in possession of the undisclosed material adverse information, the Insider

9  Selling Defendants sold the following shares of Cell Therapeutics stock:

| Name | Date | Shares | Price | Proceeds |
|------|------|--------|-------|----------|
| James A. Bianco | 4/5/2005 | 20000 | $ 3.69 | $ 73,800.00 |
|  | 4/5/2005 | 10000 | $ 3.68 | $ 36,800.00 |
|  | 12/10/2004 | 1800 | $ 7.62 | $ 13,716.00 |
|  | 12/10/2004 | 300 | $ 7.63 | $ 2,289.00 |
|  | 12/10/2004 | 1400 | $ 7.64 | $ 10,696.00 |
|  | 12/10/2004 | 1300 | $ 7.59 | $ 9,867.00 |
|  | 12/10/2004 | 100 | $ 7.60 | $ 760.00 |
|  | 12/10/2004 | 300 | $ 7.61 | $ 2,283.00 |
|  | 12/10/2004 | 1000 | $ 7.56 | $ 7,560.00 |
|  | 12/10/2004 | 500 | $ 7.57 | $ 3,785.00 |
|  | 12/10/2004 | 775 | $ 7.58 | $ 5,874.50 |
|  | 12/10/2004 | 1100 | $ 7.65 | $ 8,415.00 |
|  | 12/10/2004 | 5225 | $ 7.50 | $ 39,187.50 |
|  | 12/10/2004 | 1900 | $ 7.52 | $ 14,288.00 |
|  | 12/10/2004 | 400 | $ 7.53 | $ 3,012.00 |
|  | 12/10/2004 | 500 | $ 7.54 | $ 3,770.00 |
|  | 12/10/2004 | 3400 | $ 7.55 | $ 25,670.00 |
|  | 7/1/2004 | 10000 | $ 7.25 | $ 72,500.00 |
|  |  | 60000 |  | $ 334,273.00 |
| Jack W Singer | 3/1/2005 | 5000 | $ 10.00 | $ 50,000.00 |
|  | 3/1/2005 | 100 | $ 10.02 | $ 1,002.00 |
|  | 3/1/2005 | 700 | $ 9.98 | $ 6,986.00 |
|  | 3/1/2005 | 1135 | $ 9.93 | $ 11,270.55 |
|  | 3/1/2005 | 565 | $ 9.94 | $ 5,616.10 |
|  | 2/1/2004 | 7500 | $ 9.98 | $ 74,850.00 |
|  | 1/3/2005 | 1600 | $ 8.01 | $ 12,816.00 |
|  | 1/3/2005 | 400 | $ 8.11 | $ 3,244.00 |
|  | 1/3/2005 | 1200 | $ 8.10 | $ 9,720.00 |
|  | 12/13/2005 | 1600 | $ 7.55 | $ 12,080.00 |

SHAREHOLDER DERIVATIVE COMPLAINT - 18

MULFINGER LAW GROUP PLLC
13555 Bel-Red Road, Suite 111A
Bellevue, WA  98005
Telephone: (425) 284-1812 • Facsimile: (425) 284-1813

| | | 19800 | | | $ 187,584.65 |
|---|---|---|---|---|---|
| Silvano Spinelli | 1/4/2005 | 4300 | $ | 7.76 | $   33,368.00 |
| | 1/4/2005 | 5000 | $ | 7.80 | $   39,000.00 |
| | 1/4/2005 | 7000 | $ | 7.79 | $   54,530.00 |
| | 1/4/2005 | 8700 | $ | 7.78 | $   67,686.00 |
| | 1/4/2005 | 2550 | $ | 7.84 | $   19,992.00 |
| | 1/4/2005 | 572 | $ | 7.83 | $     4,478.76 |
| | 1/4/2005 | 11878 | $ | 7.82 | $   92,885.96 |
| | | 40000 | | | $ 311,940.72 |
| Total: | | 119800 | | | $ 833,798.37 |

## DERIVATIVE AND DEMAND FUTILITY ALLEGATIONS

48.     Plaintiff brings this action derivatively in the right and for the benefit of Cell Therapeutics to redress injuries suffered, and to be suffered, by Cell Therapeutics as a direct result of the breaches of fiduciary duty, abuse of control, gross mismanagement, waste of corporate assets and unjust enrichment, as well as the aiding and abetting thereof, by the Individual Defendants.  Cell Therapeutics is named as a nominal defendant solely in a derivative capacity.  This is not a collusive action to confer jurisdiction on this Court that it would not otherwise have.

49.     Plaintiff will adequately and fairly represent the interests of Cell Therapeutics in enforcing and prosecuting its rights.

50.     Plaintiff is and was an owner of the stock of Cell Therapeutics during times relevant to the Individual Defendants' wrongful course of conduct alleged herein, and remains a shareholder of the Company.

51.     The current Board of Cell Therapeutics consists of the following nine individuals: defendants Link, Bianco, Fluke, Gregorian, Nudelman, Mundinger, Platzer, Singer, and Spinelli. Plaintiff has not made any demand on the present Board of Cell Therapeutics to institute this action because such a demand would be a futile, wasteful and useless act, particularly for the following reasons:

(a)     As a result of their access to and review of internal corporate documents, conversations and connections with other corporate officers, employees and directors; and

SHAREHOLDER DERIVATIVE COMPLAINT - 19

MULFINGER LAW GROUP PLLC
13555 Bel-Red Road, Suite 111A
Bellevue, WA  98005
Telephone: (425) 284-1812 • Facsimile: (425) 284-1813

1   attendance at management and Board meetings, each of the defendants knew the adverse non public

2   information regarding the Company's flagship drug XYOTAX. While in possession of this material

3   adverse non public information regarding the Company's flagship drug XYOTAX, the following

4   current members of the Cell Therapeutics Board participated in the illegal insider selling:

5   (i)   During the Relevant Period, Bianco sold 60,000 shares of Cell

6   Therapeutics stock for proceeds of $334,273.00;

7   (ii)   During the Relevant Period, Singer sold 19,800 shares of Cell

8   Therapeutics stock for proceeds of $187,584.65; and

9   (iii)   During the Relevant Period, Spinelli sold 40,000 shares of Cell

10   Therapeutics stock for proceeds of $311,940.72.  Because these defendants received a personal

11   financial benefit from the challenged insider trading transactions, these defendants are interested and

12   any demand upon them is futile;

13   (b)   The Compensation Committee of the Board discharges the Board's

14   responsibilities relating to compensation of the Company's executive officers, including the Chief

15   Executive Officer, oversees all compensation programs involving the use of the Company's stock

16   and produces an annual report on executive compensation in accordance with applicable rules and

17   regulations for inclusion in the Company's proxy statement for its annual meeting of shareholders.

18   The Compensation Committee met seven times in 2003.  According to the Company's public

19   website, the Compensation Committee is comprised of defendants Gregorian, Link and Mundinger.

20   As the members of the Compensation Committee singularly control the other defendants' awards, the

21   remaining members of the Board will not institute this action against defendants Gregorian, Link and

22   Mundinger.  To do so would jeopardize each defendant's personal financial compensation.  Thus,

23   demand on defendants Bianco, Fluke, Nudelman, Platzer, Singer, and Spinelli is futile;

24   (c)   The principal professional occupation of defendant Bianco is his employment

25   with Cell Therapeutics, pursuant to which he received and continues to receive substantial monetary

26   compensations and other benefits.  Specifically, for FY:03, Cell Therapeutics paid defendant Bianco

27   $3,053,665, in salary, bonus, restricted stock awards and other compensation, and granted him

28   SHAREHOLDER DERIVATIVE COMPLAINT - 20

1   125,000 options to purchase Cell Therapeutics stock.   Accordingly, defendant Bianco lacks

2   independence from defendants Gregorian, Link and Mundinger, defendants who are not disinterested

3   and/or independent and who exert influence over defendant Bianco's compensation by virtue of their

4   position as members of the Compensation Committee.  This lack of independence renders defendant

5   Bianco incapable of impartially considering a demand to commence and vigorously prosecute this

6   action;

7           (d)     The principal professional occupation of defendant Singer is his employment

8   with Cell Therapeutics, pursuant to which he received and continues to receive substantial monetary

9   compensations and other benefits.  Specifically, for FY:03, Cell Therapeutics paid defendant Singer

10  $1,223,596 in salary, bonus, restricted stock awards and other compensation, and granted him 75,000

11  options to purchase Cell Therapeutics stock.  Accordingly, defendant Singer lacks independence

12  from defendants Gregorian, Link and Mundinger, defendants who are not disinterested and/or

13  independent and who exert influence over defendant Singer's compensation by virtue of their

14  position as members of the Compensation Committee.  This lack of independence renders defendant

15  Singer incapable of impartially considering a demand to commence and vigorously prosecute this

16  action;

17          (e)     The principal professional occupation of defendant Spinelli is his employment

18  with Cell Therapeutics, pursuant to which he received and continues to receive substantial monetary

19  compensations and other benefits.  Accordingly, defendant Spinelli lacks independence from

20  defendants Gregorian, Link and Mundinger, defendants who are not disinterested and/or independent

21  and who exert influence over defendant Spinelli's compensation by virtue of their position as

22  members of the Compensation Committee.  This lack of independence renders defendant Spinelli

23  incapable of impartially considering a demand to commence and vigorously prosecute this action;

24          (f)     Defendants Link, Fluke, Gregorian, Nudelman, Mundinger and Platzer as

25  nonemployee directors each receive $2,000 per meeting of the board, up to a maximum of $10,000

26  per director each calendar year, and $1,000 per meeting of a board committee, up to a maximum of

27  $5,000 per committee per director each calendar year.  These defendants also receive an annual grant

28

SHAREHOLDER DERIVATIVE COMPLAINT - 21

MULLINGER LAW GROUP PLLC
13555 Bel-Red Road, Suite 111A
Bellevue, WA 98005
Telephone: (425) 284-1812 • Facsimile: (425) 284-1813

1  of 10,000 fully vested stock options. Accordingly, defendants Link, Fluke, Gregorian, Nudelman,

2  Mundinger and Platzer are incapable of impartially considering a demand to commence and

3  vigorously prosecute this action because they have an interest in safeguarding their substantial

4  compensation;

5         (g)    According to the Company's public website, the Nominating and Governance

6  Committee is comprised of defendants Fluke, Mundinger, and Nudelman. The Committee is

7  responsible for: (i) assisting the Board by identifying prospective director nominees and to

8  recommend to the Board the director nominees for each annual meeting of shareholders; (ii)

9  developing and recommending to the Board the governance principles applicable to the Company;

10  (iii) overseeing the evaluation of the Board and management; and (iv) recommending to the Board

11  director nominees for each committee. Further, the Committee determines the form and amount of

12  director compensation and conducts an annual review of director compensation. The Nominating

13  and Governance Committee met once in 2003. Nonetheless, defendants Fluke, Mundinger, and

14  Nudelman failed to fulfill their duties and responsibilities to oversee the evaluation of the Board and

15  management as evidenced by the conduct discussed herein and as required by the Nominating and

16  Governance Committee Charter. By such actions, defendants Fluke, Mundinger, and Nudelman

17  breached their duties by causing or allowing the conduct discussed herein. As a result of these

18  defendants' breach of their duties, any demand upon them is futile;

19         (h)    Defendants Fluke, Mundinger, and Nudelman singularly control the rest of the

20  directors' positions and awards by virtue of their position as the members of the Nominating and

21  Governance Committee. Defendants Fluke, Mundinger, and Nudelman are responsible for

22  identifying qualified individuals to become members of the Board, recommending Board nominees

23  for each of the Board's committees, and determining the form and amount of director compensation.

24  Therefore, defendants Link, Bianco, Gregorian, Platzer, Singer, and Spinelli will not initiate suit

25  against defendants Fluke, Mundinger, and Nudelman. Thus demand on defendants Link, Bianco,

26  Gregorian, Platzer, Singer, and Spinelli is futile;

27

28  SHAREHOLDER DERIVATIVE COMPLAINT - 22

MULFINGER LAW GROUP PLLC
13555 Bel-Red Road, Suite 111A
Bellevue, WA 98005
Telephone: (425) 284-1812 • Facsimile: (425) 284-1813

1   (i)   The Corporate Governance Guidelines ("CGG") adopted by the Board state

2   that, "[o]ne of the duties of the Board of Directors of Cell Therapeutics, Inc. (the "Company") *is to*

3   *oversee the chief executive officer and other senior management in the competent and ethical*

4   *operation of the corporation.* The Board of Directors wishes to set standards to ensure that the

5   Company is committed to business success through the maintenance of the highest standards of

6   responsibility and ethics. . . ." The CGG go on to state that, "[t]he fundamental role of the directors

7   is to exercise their business judgment to act in what they reasonably believe to be (sic) the best

8   interests of the Company and its shareholders. In fulfilling that responsibility the directors should be

9   able to rely on the honesty and integrity of the Company's senior management and legal, accounting,

10  financial and other advisors. . . . The board believes that it is critical that the Company speak with

11  one voice, and that, absent special circumstances, management speak for the Company. . . ." It

12  further states that, "[t]he board has complete access to all Company officers and employees."

13  Defendants Link, Bianco, Fluke, Gregorian, Nudelman, Mundinger, Platzer, Singer and Spinelli

14  failed to comply with the Corporate Governance Guidelines as evidenced by the conduct discussed

15  herein. By such actions, these defendants breached their duty, as outlined in the CGG, by causing or

16  allowing the conduct discussed herein. As a result of these defendants' breach of their duties, any

17  demand upon them is futile;

18  (j)   The Cell Therapeutics Board has adopted a Code of Ethics for Senior

19  Executive and Financial Officers ("Code") ". . . to promote the honest and ethical conduct of the

20  Senior Officers (as defined below) of Cell Therapeutics, Inc. ("CTI"), including the ethical handling

21  of actual or apparent conflicts of interest between personal and professional relationships; full, fair,

22  accurate, timely and understandable disclosure in periodic reports filed by CTI and compliance with

23  all applicable rules and regulations applicable to CTI and its officers." The Code goes on to state

24  that, "[t]his Code of Ethics is applicable to CTI's chief executive officer . . . 'Senior Officers.' While

25  we expect honest and ethical conduct in all aspects of our business from all of our employees, we

26  expect the highest possible honest and ethical conduct from our Senior Officers. . . CTI's Code of

27  Business Conduct and Ethics, which this Code of Ethics for Senior Executive and Financial Officers

28  SHAREHOLDER DERIVATIVE COMPLAINT - 23

1   supplements, sets forth the fundamental principles and key policies and procedures that govern the

2   conduct of all CTI employees.  You are bound by the requirements and standards set forth in the CTI

3   Corporation Code of Business Conduct and Ethics, as well as those set forth in this Code of Ethics

4   and other applicable policies and procedures.  *Compliance with this Code of Ethics is a condition of*

5   *your employment and any violations of this Code may result in disciplinary action, up to and*

6   *including termination of your employment.*"  It further states that, "[y]ou are expected to comply

7   with both the letter and spirit of all applicable laws, rules and regulations governing the conduct of

8   our business and to report any suspected violations of all applicable laws, rules and regulations to the

9   Chair of the Audit Committee."  The Code continues by stating that, "[a]s a public company, CTI is

10  required to file periodic and other reports with the Securities and Exchange Commission ("SEC").

11  *CTI's policy is to make full, fair, accurate, timely and understandable disclosure in compliance*

12  *with all applicable laws and regulations* in all reports and documents that CTI files with, or submits

13  to, the SEC *and in all other public communications made by CTI*.  As a Senior Officer, you are

14  required to promote compliance with this policy and to abide by all CTI standards, policies and

15  *procedures designed to promote compliance with this policy.*"  *Defendants* Bianco failed to comply

16  with the Code of Ethics for Senior Executive and Financial Officers as evidenced by the conduct

17  discussed herein.  By such actions, defendant Bianco breached his duties by causing or allowing the

18  conduct discussed herein which is an express violation of the Code.  As a result of Bianco's breach

19  of his duties, any demand upon him is futile;

20          (k)      The entire Cell Therapeutics Board and senior management participated in the

21  wrongs complained of herein.  Cell Therapeutics directors are not disinterested or independent due to

22  the following: defendants Link, Bianco, Fluke, Gregorian, Nudelman, Mundinger, Platzer, Singer,

23  and Spinelli served on the Cell Therapeutics Board during the Relevant Period.  Pursuant to their

24  specific duties as Board members, each was charged with the management of the Company and to

25  conduct its business affairs.  Each of the above referenced defendants breached the fiduciary duties

26  that they owed to Cell Therapeutics and its shareholders in that they failed to prevent and correct the

27  false and misleading press releases concerning the Company's drug XYOTAX.  Thus, the Cell

28  SHAREHOLDER DERIVATIVE COMPLAINT - 24

MULFINGER LAW GROUP PLLC
13555 Bel-Red Road, Suite 111A
Bellevue, WA 98005
Telephone: (425) 284-1812 • Facsimile: (425) 284-1813

1  Therapeutics Board cannot exercise independent objective judgment in deciding whether to bring

2  this action or whether to vigorously prosecute this action because its members are interested

3  personally in the outcome as it is their actions that have subjected Cell Therapeutics to millions of

4  dollars in liability for possible violations of applicable securities laws;

5     (l)  The Individual Defendants, because of their inter related business,

6  professional and personal relationships, have developed debilitating conflicts of interest that prevent

7  the Board members of the Company from taking the necessary and proper action on behalf of the

8  Company as requested herein. In addition to the conflicts that exist as a result of their participation

9  in the improper accounting and insider selling, as detailed herein supra, the majority of the Board,

10  including the defendants listed below, are subject to the following prejudicial entanglements:

11     *(i)*  ***Nudelman and Singer Are Long Time Business Associates***:

12     Defendant Nudelman is the President, Chief Executive Officer and a director
of the Hope Heart Institute, and has been since May 2000. Defendant Singer is a

13  member of the scientific advisory board of the Hope Heart Institute. In November
2002, Cell Therapeutics entered into a Sponsored Research Agreement with The

14  Hope Heart Institute to perform research specified by us and reviewed by a joint
research committee comprised of individuals from our company and from The Hope

15  Heart Institute. The Agreement has a term of two years and in addition to monthly
payments, the Individual Defendants caused the Company to grant a fully vested

16  warrant to the Hope Heart Institute to purchase 100,000 shares of Cell Therapeutics'
common stock at a purchase price of $10.00 per share. Because of their long

17  standing and entangling business and professional relationships, neither defendant
Nudelman nor defendant Singer will take the action requested by plaintiff herein

18  against one another or the remainder of the Individual Defendants.

19     *(ii)*  ***Bianco and Singer Are Long Time Business Associates***:

20     Prior to founding Cell Therapeutics, Bianco was an assistant professor of
medicine at the University of Washington, Seattle and an assistant member in the

21  clinical research division of the Fred Hutchinson Cancer Research Center. From
1990 to 1992, Bianco was the director of the Bone Marrow Transplant Program at

22  the Veterans Administration Medical Center in Seattle. Singer was a professor of
medicine at the University of Washington and a full member of the Fred Hutchinson

23  Cancer Research Center. From 1975 to 1992, Dr. Singer was the chief of medical
oncology at the Veterans Administration Medical Center in Seattle. The Fred

24  Hutchinson Cancer Research Center is a corporate affiliate of the Hope Heart
Institute. Because of their long standing and entangling business and professional

25  relationships, neither defendant Bianco nor defendant Singer will take the action
requested by plaintiff herein against one another or the remainder of the Individual

26  Defendants.

27

28  SHAREHOLDER DERIVATIVE COMPLAINT - 25

1    (m)    As of April 19, 2004, defendant Bianco held 255,000 shares of unvested

2    restricted stock. Under section 7.8 of Cell Therapeutics' 2003 Equity Incentive Plan, restricted stock

3    for which restrictions have not lapsed shall revert to the Company. As all unvested restricted shares

4    held by defendant Bianco will never vest unless Bianco retains his positions as President, CEO and

5    director of Cell Therapeutics, any demand upon defendant Bianco is futile;

6    (n)    As of April 19, 2004, defendant Singer held 90,000 shares of unvested

7    restricted stock. Under section 7.8 of Cell Therapeutics' 2003 Equity Incentive Plan, restricted stock

8    for which restrictions have not lapsed shall revert to the Company. As all unvested restricted shares

9    held by defendant Singer will never vest unless Singer retains his positions as Executive Vice

10   President, Chief Medical Officer and director of Cell Therapeutics, any demand upon defendant

11   Singer is futile;

12   (o)    Each of the key officers and directors knew of and/or directly benefited from

13   the wrongdoing complained of herein;

14   (p)    The defendant directors of Cell Therapeutics, as more fully detailed herein,

15   participated in, approved and/or permitted the wrongs alleged herein to have occurred and

16   participated in efforts to conceal or disguise those wrongs from Cell Therapeutics' stockholders or

17   recklessly and/or negligently disregarded the wrongs complained of herein, and are therefore not

18   disinterested parties;

19   (q)    In order to bring this suit, all of the directors of Cell Therapeutics would be

20   forced to sue themselves and persons with whom they have extensive business and personal

21   entanglements, which they will not do, thereby excusing demand;

22   (r)    The acts complained of constitute violations of the fiduciary duties owed by

23   Cell Therapeutics' officers and directors and these acts are incapable of ratification;

24   (s)    Each of the defendant directors of Cell Therapeutics authorized and/or

25   permitted the false statements disseminated directly to the public or made directly to securities

26   analysts and which were made available and distributed to shareholders, authorized and/or permitted

27   the issuance of various of the false and misleading statements and are principal beneficiaries of the

28   SHAREHOLDER DERIVATIVE COMPLAINT - 26

MULFINGER LAW GROUP PLLC
13555 Bel-Red Road, Suite 111A
Bellevue, WA 98005
Telephone: (425) 284-1812 • Facsimile: (425) 284-1813

1  wrongdoing alleged herein, and thus could not fairly and fully prosecute such a suit even if such suit

2  was instituted by them;

3           (t)      Any suit by the current directors of Cell Therapeutics to remedy these wrongs

4  would likely expose the Individual Defendants and Cell Therapeutics to further violations of the

5  securities laws that would result in civil actions being filed against one or more of the Individual

6  Defendants, thus, they are hopelessly conflicted in making any supposedly independent

7  determination whether to sue themselves;

8           (u)      Cell Therapeutics has been and will continue to be exposed to significant

9  losses due to the wrongdoing complained of herein, yet the Individual Defendants and current Board

10 have not filed any lawsuits against themselves or others who were responsible for that wrongful

11 conduct to attempt to recover for Cell Therapeutics any part of the damages Cell Therapeutics

12 suffered and will suffer thereby;

13          (v)      If the current directors were to bring this derivative action against themselves

14 they would thereby expose their own misconduct, which underlies allegations against them

15 contained in class action complaints for violations of securities law, which admissions would impair

16 their defense of the class actions and greatly increase the probability of their personal liability in the

17 class actions, in an amount likely to be in excess of any insurance coverage available to the

18 Individual Defendants. In essence, they would be forced to take positions contrary to the defenses

19 they will likely assert in the securities class actions. They will not do this. Thus, demand is futile;

20 and

21          (w)      If Cell Therapeutics' current and past officers and directors are protected

22 against personal liability for their acts of mismanagement, abuse of control and breach of fiduciary

23 duty alleged in this Complaint by directors' and officers' liability insurance, they caused the

24 Company to purchase that insurance for their protection with corporate funds, i.e., monies belonging

25 to the stockholders of Cell Therapeutics. However, due to certain changes in the language of

26 directors' and officers' liability insurance policies in the past few years, the directors' and officers'

27 liability insurance policies covering the defendants in this case contain provisions that eliminate

28 SHAREHOLDER DERIVATIVE COMPLAINT - 27

1  coverage for any action brought directly by Cell Therapeutics against these defendants, known as,

2  *inter alia*, the "insured versus insured exclusion." As a result, if these directors were to sue

3  themselves or certain of the officers of Cell Therapeutics, there would be no directors' and officers'

4  insurance protection and thus, this is a further reason why they will not bring such a suit. On the

5  other hand, if the suit is brought derivatively, as this action is brought, such insurance coverage

6  exists and will provide a basis for the Company to effectuate recovery. If there is no directors' and

7  officers' liability insurance at all then the current directors will not cause Cell Therapeutics to sue

8  them, since they will face a large uninsured liability.

9       52. Moreover, despite the Individual Defendants having knowledge of the claims and

10  causes of action raised by plaintiff, the current Board has failed and refused to seek to recover for

11  Cell Therapeutics for any of the wrongdoing alleged by plaintiff herein.

12  **FIRST CAUSE OF ACTION**

13  **Against the Insider Selling Defendants for Breach of Fiduciary**
**Duties for Insider Selling and *Misappropriation of Information***

14

15       53. Plaintiff incorporates by reference and realleges each and every allegation set forth

16  above, as though fully set forth herein.

17       54. At the time of the stock sales set forth herein, the Insider Selling Defendants knew the

18  information described above, and sold Cell Therapeutics common stock on the basis of such

19  information.

20       55. The information described above was proprietary non-public information concerning

21  the Company's financial condition and future business prospects. It was a proprietary asset

22  belonging to the Company, which the Insider Selling Defendants used for their own benefit when

23  they sold Cell Therapeutics common stock.

24       56. At the time of their stock sales, the Insider Selling Defendants knew that the

25  Company's revenues were materially overstated. The Insider Selling Defendants' sales of Cell

26  Therapeutics common stock while in possession and control of this material adverse non-public

27  information was a breach of their fiduciary duties of loyalty and good faith.

28  SHAREHOLDER DERIVATIVE COMPLAINT - 28

MULFINGER LAW GROUP PLLC
13555 Bel-Red Road, Suite 111A
Bellevue, WA 98005
Telephone: (425) 284-1812 • Facsimile: (425) 284-1813

57.    Since the use of the Company's proprietary information for their own gain constitutes a breach of the Insider Selling Defendants' fiduciary duties, the Company is entitled to the imposition of a constructive trust on any profits the Insider Selling Defendants obtained thereby.

## SECOND CAUSE OF ACTION

### Against All Defendants for Breach of Fiduciary Duty

58.    Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

59.    The Individual Defendants owed and owe Cell Therapeutics fiduciary obligations. By reason of their fiduciary relationships, the Officer Defendants and Director Defendants owed and owe Cell Therapeutics the highest obligation of good faith, fair dealing, loyalty and due care.

60.    The Individual Defendants, and each of them, violated and breached their fiduciary duties of care, loyalty, reasonable inquiry, oversight, good faith and supervision.

61.    Each of the Individual Defendants had actual or constructive knowledge that they had caused the Company to improperly misrepresent the fact that the additional phase III study requested by the FDA required the Company's drug XYOTAX to demonstrate success a much more difficult primary endpoint and failed to correct the Company's false and misleading press releases and publicly reported guidance. These actions could not have been a good faith exercise of prudent business judgment to protect and promote the Company's corporate interests.

62.    As a direct and proximate result of the Individual Defendants' failure to perform their fiduciary obligations, Cell Therapeutics has sustained significant damages. As a result of the misconduct alleged herein, the Individual Defendants are liable to the Company.

63.    Plaintiff on behalf of Cell Therapeutics has no adequate remedy at law.

## THIRD CAUSE OF ACTION

### Against All Defendants for Abuse of Control

64.    Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

SHAREHOLDER DERIVATIVE COMPLAINT - 29

MULFINGER LAW GROUP PLLC
13555 Bel-Red Road, Suite 111A
Bellevue, WA 98005
Telephone: (425) 284-1812 • Facsimile: (425) 284-1813

65.   The Individual Defendants' misconduct alleged herein constituted an abuse of their ability to control and influence Cell Therapeutics, for which they are legally responsible.

66.   As a direct and proximate result of the Individual Defendants' abuse of control, Cell Therapeutics has sustained significant damages.

67.   As a result of the misconduct alleged herein, the Individual Defendants are liable to the Company.

68.   Plaintiff on behalf of Cell Therapeutics has no adequate remedy at law.

## FOURTH CAUSE OF ACTION

### Against All Defendants for Gross Mismanagement

69.   Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

70.   By their actions alleged herein, the Individual Defendants, either directly or through aiding and abetting, abandoned and abdicated their responsibilities and fiduciary duties with regard to prudently managing the assets and business of Cell Therapeutics in a manner consistent with the operations of a publicly held corporation.

71.   As a direct and proximate result of the Individual Defendants' gross mismanagement and breaches of duty alleged herein, Cell Therapeutics has sustained significant damages in excess of hundreds of millions of dollars.

72.   As a result of the misconduct and breaches of duty alleged herein, the Individual Defendants are liable to the Company.

73.   Plaintiff on behalf of Cell Therapeutics has no adequate remedy at law.

## FIFTH CAUSE OF ACTION

### Against All Defendants for Waste of Corporate Assets

74.   Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

SHAREHOLDER DERIVATIVE COMPLAINT - 30

MULFINGER LAW GROUP PLLC
13555 Bel-Red Road, Suite 111A
Bellevue, WA 98005
Telephone: (425) 284-1812 • Facsimile: (425) 284-1813

1    75.    As a result of the issuance of the false and misleading press releases concerning

2  XYOTAX, and by failing to properly consider the interests of the Company and its public

3  shareholders by failing to conduct proper supervision, defendants have caused Cell Therapeutics to

4  waste valuable corporate assets by paying incentive based bonuses to certain of its executive officers

5  and incur potentially millions of dollars of legal liability and/or legal costs to defend defendants'

6  unlawful actions.

7    76.    As a result of the waste of corporate assets, the Individual Defendants are liable to the

8  Company.

9    77.    Plaintiff on behalf of Cell Therapeutics has no adequate remedy at law.

10                    **SIXTH CAUSE OF ACTION**

11            **Against All Defendants for Unjust Enrichment**

12    78.    Plaintiff incorporates by reference and realleges each and every allegation set forth

13  above, as though fully set forth herein.

14    79.    By their wrongful acts and omissions, defendants were unjustly enriched at the

15  expense of and to the detriment of Cell Therapeutics.

16    80.    Plaintiff, as a shareholder and representative of Cell Therapeutics, seeks restitution

17  from these defendants, and each of them, and seeks an order of this Court disgorging all profits,

18  benefits and other compensation obtained by these defendants, and each of them, from their

19  wrongful conduct and fiduciary breaches.

20                    **PRAYER FOR RELIEF**

21        WHEREFORE, plaintiff demands judgment as follows:

22    A.    Against all of the Individual Defendants and in favor of the Company for the amount

23  of damages sustained by the Company as a result of the Individual Defendants' breaches of fiduciary

24  duties, abuse of control, gross mismanagement, waste of corporate assets and unjust enrichment;

25    B.    Extraordinary equitable and/or injunctive relief as permitted by law, equity and state

26  statutory provisions sued hereunder, including attaching, impounding, imposing a constructive trust

27

28  SHAREHOLDER DERIVATIVE COMPLAINT - 31

                            MULFINGER LAW GROUP PLLC
                            13555 Bel-Red Road, Suite 111A
                            Bellevue, WA 98005
                    Telephone: (425) 284-1812 • Facsimile: (425) 284-1813

1  on or otherwise restricting the proceeds of defendants' trading activities or their other assets so as to

2  assure that plaintiff on behalf of Cell Therapeutics has an effective remedy;

3       C.     Awarding to Cell Therapeutics restitution from the defendants, and each of them, and

4  ordering disgorgement of all profits, benefits and other compensation obtained by the defendants;

5       D.     Awarding to plaintiff the costs and disbursements of the action, including reasonable

6  attorneys' fees, accountants' and experts' fees, costs, and expenses; and

7       E.     Granting such other and further relief as the Court deems just and proper.

8                            **JURY DEMAND**

9       Plaintiff demands a trial by jury.

10  DATED: May 6, 2005            MULFINGER LAW GROUP, PLLC
                               KIRK MULFINGER

11

12

13                               KIRK MULFINGER WSBA #27130

14

15                               13555 Bel-Red Road, Suite 111A
                             Bellevue, WA 98005

16                               Telephone: 425/284-1812
                             Facsimile: 425/284-1813

17                               ROBBINS UMEDA & FINK, LLP
                             BRIAN J. ROBBINS

18                               JEFFREY P. FINK
                             610 West Ash Street, Suite 1800

19                               San Diego, CA 92101
                             Telephone: 619/525-3990

20                               Facsimile: 619/525-3991

21                               Attorneys for Plaintiff

22

23

24

25

26  G:\Cell Therapeutics\Complaints\Cell Therapeutics Der Comp.doc

27

28  SHAREHOLDER DERIVATIVE COMPLAINT - 32

MULFINGER LAW GROUP PLLC
13555 Bel-Red Road, Suite 111A
Bellevue, WA 98005
Telephone: (425) 284-1812 · Facsimile: (425) 284-1813

## VERIFICATION

I, Brian J. Robbins, hereby declare as follows:

1.      I am a member of the law firm of Robbins Umeda & Fink, LLP, counsel for plaintiff in the above-entitled action. I have read the foregoing complaint and know the contents thereof. I am informed and believe the matters therein are true and on that ground allege that the matters stated therein are true.

2.      I make this Verification because plaintiff is absent from the County of San Diego where I maintain my office.

Executed this 28th day of April, 2005, at San Diego, California.