1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

TERENCE FERNANDES,                          )
                                            )      CASE NO.  C05-0964RSM
            Plaintiff,                      )
                                            )      ORDER GRANTING MOTION TO DISMISS
      v.                                    )      DERIVATIVE COMPLAINT AND
                                            )      GRANTING LEAVE TO AMEND
JAMES A. BIANCO, *et al.*,                  )
                                            )
            Defendants.                     )
_____)

## I.  INTRODUCTION

This matter comes before the Court on defendants' Motion to Dismiss Amended Derivative

Complaint for Failure to Make a Demand.  (Dkt. #14).  Defendants argue that because plaintiff failed

to make a required demand on Cell Therapeutics, Inc.'s ("CTI") Board of Directors, and because

plaintiff has failed to demonstrate that such demand would have been futile, his claims should be

dismissed under Federal Rules of Civil Procedure 12(b)(6) and 23.1.  Specifically, defendants argue

that plaintiff has failed to demonstrate that a majority of the Board members would have had difficulty

in objectively reviewing a demand.  Defendants also argue that plaintiff's Amended Derivative

Complaint should be dismissed for violating Rule 23. 1 because plaintiff failed to verify the Complaint

himself, and because plaintiff failed to particularly allege that he was a stockholder at the time of the

conduct of which he complains.

ORDER
PAGE - 1

1    Plaintiff responds that because all five named defendants would face a substantial likelihood of

2    liability for their actions or their failure to act, and because several of the named defendants are not

3    independent from Dr. Bianco to impartially consider a demand, such demand would have been futile.

4    Plaintiff also responds that Rule 23.1 does not specify whether the plaintiff or his attorney is required

5    to verify the Complaint, and therefore, it was proper for his attorney to submit verification. Plaintiff

6    further responds that his shareholder status was adequately stated in the Complaint.

7    For the reasons set forth below, the Court disagrees with plaintiff and GRANTS defendants'

8    motion to dismiss.

9    ## II.  BACKGROUND

10   This case is related to *Heywood, et al. v. Cell Therapeutics, et al.*, Case No. C05-0396RSM, a

11   private securities fraud class action.  In that case, plaintiffs alleged that defendants conspired to

12   defraud the investing public by twice offering shares of the company's common stock for sale while

13   failing to disclose their knowledge that a pivotal "Phase III" drug trial (the so-called "STELLAR 3"

14   study), on the efficacy of an experimental, targeted lung cancer chemotherapy treatment, Xyotax,

15   would be a failure.  This Court recently determined that plaintiffs failed to plead facts with sufficient

16   particularity under the Private Securities Litigation Reform Act, 15 U.S.C. §§ 78u-4(b)(1)-(2) (2000).

17   Accordingly, the Court dismissed the complaint in that action, and granted plaintiffs leave to amend to

18   cure the deficiency.   The case has since settled and has been dismissed with prejudice.  (Case No.

19   C05-0396RSM, Dkts. #82 and #83).

20   In the instant case, plaintiff seeks to pursue a shareholder derivative action against five

21   members of the Board of Directors of CTI, and several John Does.  Plaintiff's allegations rest

22   primarily on the same facts set forth in the *Heywood* case.  Plaintiff essentially asserts that the named

23   Board members knew that the Stellar 3 study would be a failure, but allowed positive statements to be

24   made anyway in order to artificially boost the stock price, ultimately resulting in an enormous stock

25

26   ORDER
     PAGE - 2

1  price drop when it became public that the Stellar 3 study had been a failure.  Plaintiff also alleges that

2  the named Board members breached their fiduciary duties and failed to make decisions that were best

3  for the company in order to protect their own interests.

4      Plaintiff did not make a demand on the Board to pursue these claims; instead, asserting that

5  such demand would have been futile, he filed the instant action.  This motion followed.

6                          **III.  LEGAL STANDARDS**

7      **A.  12(b)(6) Standard of Review**

8      Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must dismiss a

9  complaint if a plaintiff can prove no set of facts in support of his claim which would entitle him to

10  relief.  *Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002); *Sprewell v.*

11  *Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001); *Love v. United States*, 915 F.2d

12  1242,1245 (9th Cir. 1989).  In deciding a motion to dismiss, the Court accepts as true all material

13  allegations in the complaint and construes them in the light most favorable to the plaintiff. *See*

14  *Newman v. Sathyavaglswaran*, 287 F.3d 786, 788 (9th Cir. 2002); *Associated Gen. Contractors v.*

15  *Metro. Water Dist.*, 159 F.3d 1178, 1181 (9th Cir. 1998).  However, conclusory allegations of law

16  and unwarranted inferences are insufficient to defeat a motion to dismiss.  *Associated Gen.*

17  *Contractors*, 159 F.3d at 1181.

18      When a Complaint is dismissed for failure to state a claim, "leave to amend should be granted

19  unless the court determines that the allegation of other facts consistent with the challenged pleading

20  could not possibly cure the deficiency."  *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d

21  1393, 1401 (9th Cir. 1986). Leave to amend is properly denied "where the amendment would be

22  futile."  *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992).

23      **B.  Rule 23.1**

24      Federal Rule of Civil Procedure 23.1 governs derivative shareholder actions.  That Rule

25
ORDER
26  PAGE - 3

1   requires that the Complaint shall "allege with particularity the efforts, if any, made by the plaintiff to

2   obtain the action the plaintiff desires from the directors or comparable authority and, if necessary, from

3   the shareholders or members, and the reasons for the plaintiff's failure to obtain the action or for not

4   making the effort." Fed. R. Civ. P. 23.1.

5         **C.  Choice of Law and Demand Futility**

6         Generally, on substantive matters such as the instant one, the law of the state of incorporation

7   controls. *Kamen v. Kemper Fin. Servs.*, 500 U.S. 90, 108-09 (1991).  The parties agree that

8   Washington State law would establish "the circumstances under which demand would be futile." *In re*

9   *Silicon Graphics, Inc. Sec. Litig.*, 183 F.3d 970, 989-90 (9th Cir. 1999).  Under Washington law,

10  "derivative suits are disfavored, and may be brought only in exceptional circumstances." *Haberman v.*

11  *Wash. Pub. Power Supply Sys.*, 109 Wn.2d 107, 147 (1987).  However, Washington courts provide

12  little legal authority on demand futility.  Thus, the parties agree that this Court should look to other

13  states, particularly Delaware, which have crystallized and applied precise standards for evaluating

14  allegations of demand futility.

15        It is well-settled that demand need not be alleged if the facts pleaded show that such a demand

16  would have been futile. *Aronson v. Lewis*, 473 A.2d 805, 807 (Del. 1984), *overruled in part on other*

17  *grounds sub nom. Brehm v. Eisner*, 746 A.2d 244 (Del. 2000).  However, in that situation, demand

18  futility is established only where particularized factual allegations in the complaint raise a "reasonable

19  doubt . . . [as to whether] directors are disinterested or independent." *Aronson*, 473 A.2d at 814.

20  Where the plaintiff does not attack a particular formal business action taken by the Board, this Court

21            must determine whether or not the particularized factual allegations of a derivative
              stockholder complaint create a reasonable doubt that, as of the time the complaint
22            is filed, the board of directors could have properly exercised its independent and
              disinterested business judgment in responding to a demand. If the derivative plaintiff
23            satisfies this burden, then demand will be excused as futile.

24  *Rales v. Blasband*, 634 A.2d 927, 934 (Del. 1993).

25
    ORDER
26  PAGE - 4

1    Plaintiff must establish a reasonable doubt that the majority of the board of directors was either

2    interested or lacked independence.  *Levine v. Smith*, 591 A.2d 194, 205 (Del. 1991), *overruled in part*

3    *on other grounds sub nom. Brehm*, 746 A.2d 244.  The law presumes that corporate directors are

4    disinterested and independent and make their decisions on an informed basis and with a good faith

5    belief that the decision will serve the best interests of the corporation.  *Aronson*, 473 A.2d at 812.

6    However, a reasonable doubt as to disinterestedness exists if plaintiff can show that the director faces

7    a "substantial likelihood of liability" or "will receive a personal financial benefit from a transaction that

8    is not equally shared by the stockholders."  *Rales*, 634 A.2d at 936.  "Independence means that a

9    director's decision is based on the corporate merits of the subject before the board rather than

10   extraneous considerations or influences."  *Aronson*, 473 A.2d at 816.

11       Washington State law allows corporations to eliminate their directors' liability for non-

12   intentional breaches of fiduciary duty.  RCW 23B.02.020(5)(i) and 23B.08.320.  Accordingly, CTI

13   adopted an "exculpation" provision in its Restated Articles of Incorporation, which provides that "[n]o

14   director of the Corporation shall be personally liable to the Corporation or its shareholders for

15   monetary damages for his or her conduct as a director . . . except for (i) acts or omission that involve

16   intentional misconduct or a knowing violation of law by the director. . . ."  Therefore, "a serious threat

17   of liability may only be found to exist if the plaintiff pleads a *non-exculpated* claim against the

18   directors based on the particularized facts."  *Guttman v. Huang*, 823 A.2d 492, 501 (Del. 2003)

19   (emphasis in original); *In re Baxter Int'l S'holders Litig.*, 654 A.2d 1268, 1270 (Del. Ch. 1995).

20                              **IV.  DISCUSSION**

21   **A.  Allegations of Self-Interest and Dependance on Other Board Members**

22       In the Amended Derivative Complaint, plaintiff alleges that the named Board members allowed

23   CTI to mislead the market in three ways: 1) CTI could not have believed that the STELLAR 3's

24   interim results were "encouraging," because its officers could glean from its interim results that

25   ORDER

26   PAGE - 5

1   Xyotax was not responsible for patients' increased survival times, 2) the study was so flawed that

2   defendants must have known that its interim results meant something other than that Xyotax was

3   making patients live longer than Taxol, and 3) STELLAR 3 was never primarily a U.S. and Western

4   European study as was represented.

5           As discussed above, under the *Rales* test, this Court

6           must determine whether or not the particularized factual allegations of a derivative
            stockholder complaint create a reasonable doubt that, as of the time the complaint
7           is filed, the board of directors could have properly exercised its independent and
            disinterested business judgment in responding to a demand. If the derivative plaintiff
8           satisfies this burden, then demand will be excused as futile.

9   *Rales*, 634 A.2d at 934 (Del. 1993).

10          When plaintiff filed his original complaint on May 9, 2005, CTI's Board of Directors had nine

11  members. Plaintiff does not raise allegations challenging the independence of four of those members,

12  who subsequently resigned. Therefore, plaintiff must create a reasonable doubt concerning the

13  disinterestedness or independence of all five of the remaining directors. *See Beam v. Stewart*, 845

14  A.2d 1040, 1046 n.8 (Del. 2004). In other words, plaintiff must demonstrate that not one of those

15  five board members could have exercised independent business judgment in responding to a demand.

16          One such remaining Board Member and Director is defendant James A. Bianco. He is the

17  person alleged to have made improper statements concerning the STELLAR 3 trial. For purposes of

18  this motion, the Court finds that plaintiff has alleged sufficient facts supporting a reasonable doubt as

19  to his disinterestedness and independence. Dr. Bianco is the principal founder, President and Chief

20  Executive Officer of CTI. During the time period at issue he received his salary and bonuses from

21  CTI, as well as restricted stock awards, stock options and other compensation. During that time, Dr.

22  Bianco had a fiduciary duty to the shareholders to exercise due care, good faith and loyalty. *Malone*

23  *v. Brincat*, 722 A.2d 5, 10-13 (Del. 1998). Therefore, taking as true plaintiff's allegations that Dr.

24  Bianco's statements were knowingly false and misleading, he faces a substantial likelihood of liability

25
    ORDER
26  PAGE - 6

1   for making those statements.  However, plaintiff has not established a substantial likelihood of liability

2   on the part of the remaining directors, and therefore, has not demonstrated demand futility.

3         In plaintiff's Amended Derivative Complaint, plaintiff makes conclusory allegations that the

4   named defendant directors had non-public knowledge, based on their positions as directors, that

5   Xyotax was not a superior drug to the prevailing treatment, and then participated in the issuance of

6   false or misleading statements in spite of that knowledge.  (Dkt. #10 at 6-8).  Yet, there are no facts

7   alleged to support that conclusion.  Indeed, only Dr. Bianco is alleged to have actually made false

8   statements.  All remaining allegations state that "certain of the defendants" made statements during

9   earnings conference calls, or that all individual defendants allowed these statements to be made in

10  press releases and other public documents.  (Dkt. #10 at 13-30)  These conclusory allegations are

11  lifted nearly word for word from the complaint in the companion securities litigation referenced above,

12  and do not provide support for plaintiff's claim that the directors other than Dr. Bianco are connected

13  to the allegedly false and misleading statements.  Therefore, the Court simply cannot make the

14  inferences plaintiff urges it to make.  (Dkt. #17 at 19-23).  Moreover, "[o]utside directors are not

15  typically held liable for allegedly false or misleading information conveyed in prospectuses, registration

16  statements, annual reports, press releases, or other 'group-published information.'" *Mitzner v.*

17  *Hastings*, 2005 WL 88966 (N.D. Cal. 2005).  Accordingly, plaintiff cannot demonstrate that the

18  majority of directors would have been "interested" in a demand request on this issue, or that they face

19  a substantial likelihood of liability.  *See Caviness v. Evans*, 229 F.R.D. 354, 359 (D. Mass. 2005);

20  *Mitzner*, 2005 WL 88966, at *6, *Seminaris v. Landa*, 662 A.2d 1350, 1354 (Del. Ch. 1995).[1]

21        Likewise, the Court rejects plaintiff's argument that the remaining individual board members

22  are interested because they failed to vote for the replacement of Dr. Bianco as CEO.  Plaintiff asks the

23  _____

24        [1] Defendants also argue that plaintiff's *Caremark* claim must fail.  That argument pertains to an
    alleged failure to supervise.  (Dkt. #14 at 14).  However, the Court does not address this argument
    because plaintiff insists that he has not raised such a claim.  (Dkt. #17 at 15-16).

25
    ORDER
26  PAGE - 7

1   Court to infer from Mr. Spinelli's resignation letter that the remaining Board members would "simply

2   stand behind defendant Bianco, no matter the consequences." (Dkt. #17 at 17).  In that letter, Mr.

3   Spinelli stated that his resignation was "due to the denial by the Board of Directors of CTI to replace

4   James Bianco with a more credible and reliable CEO in the interest of the shareholders and the

5   company."  However, nothing in that statement suggests that the remaining Board members' decision

6   to retain Dr. Bianco as CEO had anything to do with the statements challenged in the securities action,

7   or that the remaining directors voted the way they did in order to protect Dr. Bianco rather than retain

8   a CEO whose qualities they believed in.  More importantly, plaintiff's argument is undermined by the

9   fact that the resignation did not occur until after plaintiff filed his original Derivative Complaint, before

10  which, he theoretically would have had the support of those four board members, and possibly could

11  have empowered them to convince a fifth member to support his demand.

12      Furthermore, plaintiff's alleged committee memberships do not demonstrate that any of the

13  Board members lack independence.  "When a lack of independence is charged, the plaintiff must allege

14  particularized facts 'show[ing] that the Board is either dominated by an officer or director who is the

15  proponent of the challenged transaction or that the Board is so under his influence that its discretion is

16  sterilized.'" *In re Sargent Tech. Inc. Deriv. Litig.*, 278 F. Supp.2d 1079, 1088 (N.D. Cal. 2003)

17  (quoting *Levine v. Smith*, 591 A.2d 194, 205 (Del. 1991)) (other internal quotation marks omitted).

18  Plaintiff cannot meet this standard with his committee membership allegations.

19      Plaintiff first alleges that demand on defendants Bianco, Singer and Nudelman would have

20  been futile because co-defendants Gregorian and Mundinger controlled two thirds of the

21  Compensation Committee, and they "singularly control" the other defendants' compensation awards.

22  This argument has no merit.  With regard to defendant Nudelman, plaintiff has failed to allege that

23  Nudelman's compensation was set by that committee, or that Nudelman was influenced by the

24  members of the committee in any other way.

25
    ORDER
26  PAGE - 8

1    Furthermore, plaintiff's argument is flawed with respect to defendants Bianco and Singer.

2  Lack of independence is only an issue when the allegedly controlling directors – here, Gregorian and

3  Mundinger – are themselves interested. *Levine*, 591 A.2d at 205.  Defendants Gregorian and

4  Mundinger, who are both outside directors, are not interested.  Indeed, the Compensation Committee

5  members are in no way tied to the allegedly misleading statements forming the basis of plaintiff's

6  complaint.

7    Similarly, plaintiff's attempt to demonstrate lack of independence by reference to defendant

8  Nudelman's and Mundinger's service on CTI's Nominating and Corporate Governance Committee

9  must also fail.  The committee members are outside directors who, like the Compensation Committee

10 members, are not tied to the allegedly improper statements forming the basis on plaintiff's complaint.

11   Plaintiff's case citations do not compel a decision to the contrary.  All of those cases involved

12 situations where interested directors who allegedly controlled the compensation and employment of

13 independent directors.  (*See* Dkt. #17 at 12 n.8).

14   **C. Exculpation Clause**

15   As noted above, Washington law allows corporations to eliminate directors' liability for non-

16 intentional breaches of fiduciary duty.  *See* RCW 23B.02.020(5)(i) and 23B.08.320.  CTI has done so

17 in its Articles of Incorporation.  Plaintiff's argument that this statute merely creates an affirmative

18 defense that should not form the basis of dismissal is not persuasive.

19   Whether a director faces a substantial likelihood of personal liability – a determination this

20 Court engaged in above – requires the consideration of what a director can be held liable for.  As

21 explained above, plaintiff has failed to plead with particularity that any of the directors, except for Dr.

22 Bianco, faced a substantial likelihood of liability for an intentional or knowing violation of the law.

23 Therefore, plaintiff has not demonstrated that this statute would not protect the directors, and thereby

24 eliminate any potential liability.

25

ORDER
26 PAGE - 9

1

### D. Totality of the Circumstances

2     Plaintiff next argues that this Court should deny the motion to dismiss based on a totality of the

3 circumstances analysis.  However, the Court has rejected all of plaintiff's argument pertaining to

4 independence or likelihood of liability with regard to all of the remaining directors except for Dr.

5 Bianco.  Therefore, even under the totality of the circumstances, this Court is not persuaded that a

6 demand would have been futile.

7

### E. Verification of Plaintiff's Complaint

8     Because the Court grants defendants' motion to dismiss for the reasons set forth above, it is

9 not necessary to reach defendants' argument that plaintiff failed to properly verify his Complaint or

10 that he failed to properly allege stock ownership during the relevant time period and continuing to the

11 present.

12

### F. Leave to Amend

13     In order to show that a demand would have been futile, plaintiff is required to demonstrate that

14 the board of directors could not have properly exercised its independent and disinterested business

15 judgment in responding to a demand.  Although plaintiff has demonstrated that Dr. Bianco has a

16 substantial likelihood of liability, and therefore, demand may have been futile with respect to him,

17 plaintiff has failed to demonstrate that likelihood as to the remaining individual directors.  Accordingly,

18 plaintiff has failed to create a reasonable doubt concerning the disinterestedness or independence of a

19 majority of the board members at the time he filed his original Complaint, and, therefore, this Court

20 finds that plaintiff has not demonstrated futility.

21     Nonetheless, leave to amend should be granted unless the Court "determines that the pleading

22 could not possibly be cured by the allegation of other facts."  *See* Fed. R. Civ. P. 15(a); *Lopez v.*

23 *Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000).  Here, plaintiff could conceivably plead facts regarding

24 the independence and disinterestedness of the remaining individual directors, demonstrating that any

25

ORDER
26 PAGE - 10

demand would have been futile.  Accordingly, the Court grants plaintiff leave to amend his Amended Derivative Complaint.

### V.  CONCLUSION

The Court has reviewed defendants' Motion to Dismiss, plaintiff's opposition, defendants' reply, along with the remainder of the record, and hereby finds and ORDERS:

(1)  Defendants' Motion to Dismiss the Amended Derivative Complaint (Dkt. #14) is GRANTED and the Amended Derivative Complaint is dismissed.

(2)  Plaintiff's request for leave to amend is GRANTED.  Plaintiff shall file a Second Amended Derivative Complaint no later than thirty (30) days from the date of this Order.

(3)  Defendants shall have thirty (30) days to file their Amended Answer, or otherwise respond to such Complaint.

(4)  The Clerk SHALL send a copy of this Order to all counsel of record.

DATED this 21st day of June 2006.

RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE

ORDER
PAGE - 11